IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CINDY SIMPSON as Personal
Representative of the Estate of
RICKEY RAY SIMPSON, deceased,

     Plaintiff,

vs.                                                               CIV. NO. 07-942 BRB/WDS

NEW MEXICO DEPARTMENT OF
CORRECTIONS, WEXFORD HEALTH
SOURCES, JOSE ROMERO, CHRIS BIDDLE,
JAMES MONTOYA, PHILLIP RUIZ, MD,
JOSEPH DITURO, MD, CYNTHIA ROSSI, MD,
FNU BLEA, LPN, FNU JIMENEZ, RN, FNU LNU
MD, JAMES MONTOYA in their individual
capacities.

     Defendants.

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, TORT CLAIMS, AND DAMAGES

Plaintiff Cindy Simpson as Personal Representative of the Estate of Rickey Ray Simpson, by and through her attorneys, brings this complaint for violation of his civil rights under 42 U.S.C. §§ 1983 and 1988, and, for state law torts including false imprisonment, negligent infliction of emotional distress, recklessness, gross negligence, and negligence; and alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. § 1343, with pendent jurisdiction over the state law claims. Venue is proper in this District as Defendants are all residents of New Mexico and all of the

1

acts complained of occurred in New Mexico. Plaintiff's cause of action arose in New Mexico.

## PARTIES

2. Plaintiff's decedent, Mr. Simpson, was a resident and citizen of the state of New Mexico.

3. Defendant the New Mexico Department of Corrections operates the Central New Mexico Correctional Facility ("CNMCF") in Los Lunas, New Mexico.

4. Defendant Jose Romero was, at all relevant times herein, the warden of CNMCF employed by Defendant the New Mexico Department of Corrections.

5. Defendant James Montoya was, at all relevant times herein, the Unit Manager of the Long-Term Care Unit at CNMCF.

6. Defendant Chris Biddle was, at all relevant times herein, a caseworker at CNMCF employed by Defendant the New Mexico Department of Corrections.

7. Defendant Wexford Health Sources is a Florida corporation with its principal place of business in Allegheny County, Pennsylvania. At all times material hereto, Defendant Wexford Health Sources was under contract with the Department of Corrections to provide health care services to inmates within the Department of Corrections, and was doing business within the State of New Mexico. Upon information and belief, Defendant Wexford Health Sources was not a Qualified Health Practitioner under the Medical Malpractice Act. Defendant Wexford Health Sources employed numerous medical personnel who failed to adequately evaluate, diagnose and treat Mr. Simpson, including, among others Ms. Angela Baker Billings,

LPN, Dr. Rosemary Beck, MD, Dr. Donna Deming, MD, Dr. FNU Herbel MD, and Dr. FNU Featherstone MD.

8. Defendant FNU Blea was at all times relevant herein, a Licensed Practical Nurse who provided health-care and other services at CNMCF. Defendant FNU Jimenez was at all times relevant herein, a Registered Nurse who provided health-care and other services at CNMCF. Defendants Jimenez and Blea were employed by Defendant Wexford Health Sources. Upon information and belief, Defendants Jimenez and Blea were not Qualified Medical Practitioners under the Medical Malpractice Act.

9. On information and belief Joseph Dituro, MD, and Cynthia Rossi, MD were at all times relevant hereto physicians licensed to practice medicine within the State of New Mexico and were providing healthcare to inmates at CNMCF. These Defendants were either employed by Wexford Health Sources or independent contractors of Wexford Health Sources. Upon information and belief, these Defendants were not Qualified Medical Practitioners under the Medical Malpractice Act.

10. On information and belief Defendant Philip Ruiz was at all times relevant hereto a physician licensed to practice medicine within the State of New Mexico and was providing healthcare to inmates as the Medical Director of CNMCF employed by Wexford Health Sources after on or about September 1, 2005. Upon information and belief, Defendant Ruiz was not a Qualified Medical Practitioner under the Medical Malpractice Act.

11. On information and belief Defendant FNU LNU MD, was at all times relevant hereto a physician licensed to practice medicine within the State of New Mexico and was providing healthcare to inmates at CNMCF. FNU LNU MD was on information and belief employed by Wexford Health Sources or was an independent contractor who treated Mr. Simpson during the last few months of 2005 up until his death in January 2006, including but not limited to on November 21, 22, 23, 28 and December 1, 6, 8, 14, 16, 20, 22, 29, 30 and whose first name may be "Stan" and whose last name may be "Saylor" Upon information and belief, FNU LNU MD was not a Qualified Medical Practitioner under the Medical Malpractice Act.

12. The individual Defendants are sued in their individual capacities.

13. At all times material to this Complaint, the individual Defendants were acting under color of law and within the scope of their duties and employment.

**FACTUAL BACKGROUND**

14. On or about November 6, 2001 Mr. Simpson was transferred to the custody of the CNMCF.

15. During the course of his incarceration, Mr. Simpson suffered from various severe medical conditions, including renal disease and diabetes.

16. On or about June 6, 2005 Mr. Simpson became eligible for release on parole.

17. On or about this date, Mr. Simpson began an in-house parole.

18. On or about August 22, 2005, Dr. Rosemary Beck, MD, the Medical Director of CNMCF sent a memo to the other individual Defendants wherein she stated that Mr. Simpson could not parole from the facility unless he had a local dialysis chair set up.

19. On or about September 21, 2005 the New Mexico Parole Board signed a certificate of parole, authorizing Mr. Simpson to be paroled from the CNMCF to the home of his step-son Lucas Sargeant.

20. In anticipation of his release, Mr. Simpson's children, Justin Sargeant, Lucas Sargeant, and Ricki Simpson, prepared living quarters and a dialysis program for their father.

21. Notwithstanding the certificate of parole, and despite Mr. Simpson's and his family's persistent requests that he be released, Defendants jointly refused to honor the Parole Board's order and release Mr. Simpson.

22. Defendants did not seek or conduct another parole hearing or take steps to otherwise legally overrule the parole order that was in place.

23. On or before September 7, 2005, one or more of Mr. Simpson's toes had blackened due to gangrene.

24. For at least approximately five months, despite their knowledge of the seriousness of his condition Defendants and other Wexford Health Source agents and employees failed to provide adequate medical attention, treatment and evaluation to Mr. Simpson's condition. Thus, Mr. Simpson's condition grew worse and spread throughout his leg to his hip.

25. On or about January 21, 2005, Mr. Simpson was finally transferred to the hospital where his leg was amputated. However, the medical intervention was too late and Mr. Simpson was pronounced dead on January 22, 2006.

**COUNT I: EIGHTH AMENDMENT CLAIMS AGAINST INDIVIDUAL DEFENDANTS**

26. Plaintiff incorporates paragraphs 1 through 25 as though fully set forth herein.

27. Mr. Simpson had the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. This included a right to be free from false imprisonment, torture and deliberate indifference to serious medical needs by Defendants.

28. The individual Defendants violated Mr. Simpson's rights under this constitutional amendment by illegally detaining and falsely imprisoning Mr. Simpson although he had been granted release by the parole board, and by conspiring to do so, and by engaging in deliberate indifference to Mr. Simpson's serious medical needs.

29. The acts of the individual Defendants were intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of Mr. Simpson's constitutional rights.

30. The acts of the individual Defendants proximately caused Mr. Simpson damages and injuries. These damages include physical injury, pain and suffering, severe psychological and emotional distress and death.

WHEREFORE, Plaintiff Cindy Simpson as Personal Representative of the Estate of Rickey requests compensatory and punitive damages against the individual Defendants, together with all costs and attorneys' fees.

### COUNT II: FOURTH AND FOURTEENTH AMENDMENT CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

31. Plaintiff incorporates paragraphs 1 through 30 as though fully set forth herein.

32. Mr. Simpson had the right to be free from unreasonable seizure and not to be deprived of liberty without due process under the Fourth and Fourteenth Amendments to the United States Constitution.

33. Defendants violated Mr. Simpson's rights when they imprisoned and/or conspired to imprison Mr. Simpson at CNMCF despite an order authorizing his release.

34. On or after September 21, 2005, Mr. Simpson, having been granted parole had the right to be free from punishment under the Fourth and Fourteenth Amendments to the United States Constitution. This included a right to receive necessary medical care.

35. At all relevant times, Defendants had a constitutional duty to provide adequate medical care for the serious medical needs of Mr. Simpson whom they illegally detained.

36. Mr. Simpson's medical needs from September, 2005 until his death on or about January 22, 2005 were of the most serious and obvious kind.

37. Defendants deliberately and consciously ignored Mr. Simpson's serious medical needs, by failing to provide him with necessary medical treatment for his gangrene.

38. Thus, Defendants knowingly placed Mr. Simpson in a dangerous situation, and acted with deliberate indifference to his constitutional right to receive adequate medical treatment while they illegally incarcerated him.

39. Defendants' acts were intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of Mr. Simpson's constitutional rights.

40. Defendants' actions and omissions as set forth above proximately caused Mr. Simpson damages and injuries as set forth above, including but not limited to physical injury, physical pain and suffering, severe psychological and emotional distress, and death.

WHEREFORE, Plaintiff Cindy Simpson, as Personal Representative of the Estate of Rickey Simpson requests compensatory and punitive damages against the individual Defendants, together with all costs and attorneys fees.

### COUNT III: SECTION 1983 CLAIMS AGAINST DEFENDANTS THE DEPARTMENT OF CORRECTIONS AND WEXFORD HEALTH SOURCES

41. Plaintiff incorporates paragraph 1 through 40 as though fully set forth herein.

42. Before the incidents forming the basis of Plaintiff's complaint, Defendants the Department of Corrections and Wexford Health Sources and their agents and employees knew of several incidents of malicious and deliberate indifference to the serious medical needs of CNMCF and other Department of Corrections inmates. Indeed, Defendants knew this problem to be endemic to the Department of Corrections during Wexford Health Sources contract and contrary to the proper administration of a prison system and medical facility.

43. Despite this knowledge, Defendants did nothing to institute and enforce procedures and regulations designed to protect detainees from deliberate indifference to serious medical needs by Wexford Health Sources' and Department of Corrections' agents and employees.

44. Thus, Defendants knowingly placed Plaintiff's decedent in a dangerous situation, and themselves acted with deliberate indifference to Plaintiff's decedent's constitutional right to be free from a substantial risk of serious harm, *i.e.*, deliberate indifference to serious medical needs by Department of Corrections and Wexford Health Sources employees.

45. Defendants' failure to adequately train and supervise Department of Corrections and Wexford Health Sources employees, and to institute and enforce adequate procedures and regulations against conduct such as that complained of here, constituted deliberate indifference to Plaintiff's decedent's Eighth and Fourteenth Amendment rights. Defendants owed Plaintiff's decedent an affirmative duty to secure him from dangerous situations such as that described here.

46. Insufficient training, supervision, and procedures, and a complete failure to prevent conduct such as that complained of here, constituted a custom, practice, and policy illustrating the deliberate indifference of Defendant the Department of Corrections and Wexford Health Sources to the rights of Plaintiff's decedent and other Department of Corrections inmates.

47. Defendants' wrongful acts and failures to act proximately caused Plaintiff's decedent damages. These damages include physical injury, physical pain and suffering, psychological injury and emotional distress, and death.

WHEREFORE, Plaintiff Cindy Simpson, as personal Representative of the Estate of Rickey Simpson asks for compensatory and punitive damages against Defendant Wexford Health Sources

and compensatory damages against Defendant the Department of Corrections, together with an award of reasonable attorneys fees and costs.

### COUNT IV: TORT CLAIMS AGAINST ALL DEFENDANTS

48. Plaintiff incorporates paragraphs 1 through 47 as though fully set forth herein.

49. Defendants conspired to falsely imprison Mr. Simpson.

50. Defendants and their employees and agents falsely imprisoned and inflicted emotional distress upon Mr. Simpson.

51. Defendants' and their employees' and agents' wrongful acts proximately caused Mr. Simpson damages. These damages include physical injury, pain and suffering, and severe psychological and emotional distress.

52. Defendant the New Mexico Department of Corrections is vicariously liable for the negligent, grossly negligent, reckless and intentional torts of the individual Defendants whom it employed and other CNMCF employees committed within the scope of their employment.

53. Defendant Wexford Health Sources is vicariously liable for the negligence, gross negligence, and recklessness of the individual Defendants who it employed as well as other Wexford Health Sources agents and employees committed within the scope of their employment.

WHEREFORE, Plaintiff Cindy Simpson, as Personal Representative of the Estate of Rickey Simpson, asks for compensatory and punitive damages, and an award of attorneys' fees and costs, against the individual Defendants and Wexford Health Sources, and for compensatory damages and

an award of attorneys' fees and costs against Defendant the New Mexico Department of Corrections.

## COUNT V: CLAIMS FOR NEGLIGENT, GROSSLY NEGLIGENT, AND RECKLESS OPERATION OF A PUBLIC AND MEDICAL FACILITY AGAINST ALL DEFENDANTS

54. Plaintiff incorporates paragraphs 1 through 53 as though fully set forth herein.

55. The individual Defendants, Defendant Wexford Health Sources, and the New Mexico Department of Corrections had a duty to exercise reasonable care for inmates' safety and well-being in the operation of CNMCF.

56. Defendants failed to exercise such care, by illegally and falsely imprisoning Mr. Simpson, failing to properly train and supervise its employees, failing to ensure that Mr. Simpson received adequate treatment for his obvious and serious medical needs, to take any steps to eliminate or reduce gross and reckless medical malpractice committed by Wexford Health Source employees and agents, to make other, adequate medical care available to CNMCF inmates, or to otherwise protect the inmates from malpractice.

57. Defendant the Department of Corrections also failed in its duty of care in negligently selecting, hiring, supervising, monitoring, and retaining Wexford Health Sources and its employees, and by failing to provide a competent medical clinic at CNMCF.

58. Defendants' actions with regard to Mr. Simpson, his false imprisonment, and his medical treatment needs were in complete derogation of any known standard for the proper administration of a correctional and medical facility, and constituted

negligent, grossly negligent, and reckless operation of a public and medical facility, *i.e.*, CNMCF and its long-term care unit.

59. Defendant the New Mexico Department of Corrections is vicariously liable for the negligence, gross negligence, and recklessness of the individual Defendants who it employed as well as other CNMCF employees committed within the scope of their employment. Defendant the New Mexico Department of Corrections as employer and/or by reason of its contractual relationship is also liable for acts committed by Wexford Health Sources and individuals employed by Wexford Health Sources as agents of the Department of Corrections.

60. Defendant Wexford Health Sources is vicariously liable for the negligence, gross negligence, and recklessness of the individual Defendants who it employed as well as other Wexford employees committed within the scope of their employment.

61. Defendants' negligence, gross negligence, and recklessness as set forth above proximately caused Mr. Simpson damages and injuries as set forth above, including but not limited to physical injury, physical pain and suffering, psychological and emotional distress, and death.

62. Plaintiff is entitled to recover from these Defendants under the common law of New Mexico and/or the New Mexico Tort Claims Act, section 41-4-6, 41-4-9, and 41-4-10 et seq.

WHEREFORE, Plaintiff Cindy Simpson, as Personal Representative of the Estate of Rickey Simpson, asks for compensatory damages against Defendants together with an award of costs.

## COUNT VI: MEDICAL MALPRACTICE CLAIM, OR ALTERNATIVELY, CLAIM FOR NEGLIGENCE, GROSS NEGLIGENCE, AND RECKLESSNESS AGAINST DEFENDANTS RUIZ MD, JOSEPH DITURO, MD, CYNTHIA ROSSI, MD, FNU LNU, MD, FNU BLEA, FNU JIMENEZ, AND WEXFORD HEALTH SOURCES

63. Plaintiff incorporates paragraphs 1 through 62 as though fully set forth herein.

64. In treating Mr. Simpson, Defendants Ruiz, Dituro, Rossi, Blea, Jimenez, FNU LNU, MD, and Wexford Health Sources as well as other Wexford agents and employees had a duty to possess and apply knowledge, skill, and care conforming with proper standards of medical practice recognized in the community and under the circumstances in question.

65. These Defendants and other Wexford Health Sources employees and agents breached these duties as set forth above and including but not limited to failing to examine, treat, diagnose, and render and obtain proper, adequate, and timely medical care for Mr. Simpson.

66. Defendants Ruiz and Wexford Health Sources, and other Wexford supervisory employees also breached their duties when they failed to provide proper instructions and supervision to medical personnel within their supervision as well as to corrections officers about proper care of Mr. Simpson's serious medical needs. These Defendants also breached their duties when they failed to institute and implement proper policies and procedures for the treatment and follow-up care of inmates such as Mr. Simpson.

67. Defendant Wexford Health Sources is vicariously liable for the negligence, gross negligence, and recklessness of its agents and employees committed within the scope of their employment.

68. Defendants' actions and omissions as set forth above proximately caused Mr. Simpson damages and injuries as set forth above, including but not limited to physical injury, physical pain and suffering, psychological and emotional distress and death.

69. Plaintiff is entitled to recover from these Defendants under the common law of New Mexico, the New Mexico Medical Malpractice Act, and/or the New Mexico Tort Claims Act, section 41-4-6, 41-4-9, and 41-4-10 et seq..

WHEREFORE, Plaintiff requests compensatory and punitive damages against these Defendants together with costs.

### COUNT VII: BREACH OF CONTRACT - THIRD PARTY BENEFICIARY AGAINST WEXFORD HEALTH SOURCES

70. Plaintiff incorporates paragraphs 1 through 69 as though fully set forth herein.

71. Defendants Wexford Health Sources was at all relevant times obligated by contract with the States of New Mexico Department of Corrections to provide prompt, proper and adequate medical care to, and for the benefit of inmates within the Department of Corrections.

72. Mr. Simpson, as an inmate within the Department of Corrections was a third party beneficiary of the contract between Wexford Health Sources and the Department of Corrections.

73. Defendant Wexford Health Sources breached its contractual obligations to provide prompt, proper, competent, and adequate medical services to Mr. Simpson as set forth above.

74. Defendants' actions and omissions as set forth above proximately caused Mr. Simpson damages and injuries as set forth above, including but not limited to physical injury, physical pain and suffering, psychological and emotional distress and death.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendant Wexford Health Sources, together with costs.

## JURY TRIAL DEMAND

75. Plaintiff hereby demands a trial by jury on all counts so triable.

Respectfully submitted,

/s/ Kirtan Khalsa
Kirtan Khalsa
812 Marquette Ave. NW
Albuquerque, NM 87102
(505) 604-3322

Mark Fine
Fine Law Firm
220 9th St. NW
Albuquerque, NM 87102
(505) 243-4542