UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

| | |
|---|---|
| RACHEL HIGGINS, as Personal Representative of the Estate of RICKEY RAY SIMPSON, deceased,<br><br>      Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES; JOSE ROMERO; CHRIS BIDDLE; JAMES MONTOYA; JOSEPH DITURO, MD; HARVEY FEATHERSTONE, MD; EVELYN BLEA, LPN; and ELAINE JIMENEZ, RN; in their individual capacities,<br><br>      Defendants. | No.  CIV-07-0942 BRB/WDS |

ORDER GRANTING IN PART DEFENDANT BIDDLE'S
MOTION FOR SUMMARY JUDGMENT

BALDOCK, Circuit Judge.[*]

Rickey Ray Simpson was, at the time of his death, in the custody of the Central New Mexico Correctional Facility (CNMCF), located in Los Lunas, New Mexico. The personal representative of his estate (Plaintiff) instituted this lawsuit against (1) Wexford Health Sources (Wexford), a private company contracted by the New Mexico Department of

---

[*] Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit Court of Appeals, sitting by designation pursuant to 28 U.S.C. § 291(b).

Corrections to provide healthcare services to inmates at CNMCF, (2) four Wexford employees, and (3) three CNMCF officials. Currently before the Court is Defendant Christopher Biddle's motion for summary judgment. See Fed. R. Civ. P. 56(b).

Defendant Biddle served as a classification officer at CNMCF. Plaintiff's Second Amended Complaint (Complaint) charges him — along with the other individual Defendants — with violating Mr. Simpson's Fourth, Eighth, and Fourteenth Amendment rights, as well as New Mexico tort law. Count I alleges, under the rubric of cruel and unusual punishment, that Defendants falsely imprisoned Mr. Simpson and were deliberately indifferent to his serious and obvious medical needs. Count II charges Defendants with unreasonably seizing Mr. Simpson, depriving him of his liberty without due process, and violating his right to be free from punishment, i.e., by infringing Mr. Simpson's constitutional right to receive necessary medical care. Count IV states tort claims based on Mr. Simpson's false imprisonment and emotional distress. Finally, Count V advances tort claims predicated on Defendants' negligent and reckless operation of a medical facility. Based on these alleged transgressions, Plaintiff requests compensatory and punitive damages, costs, and attorney's fees.

To appreciate the nature of Plaintiff's claims, one requires a basic familiarity with the facts of this case. Mr. Simpson was in the custody of CNMCF from November 2001 until his death in January 2006. He suffered from, among other things, diabetes and renal failure, which necessitated that he receive regular dialysis. In June 2005, Mr. Simpson became eligible for parole. But CNMCF's medical director determined that Mr. Simpson could not

be paroled until arrangements were made for him to use a dialysis chair in the area in which he was to live. Under the parole plan then in place, which Defendant Biddle had a hand in preparing, Mr. Simpson was to be placed in the home of his step-son — a resident of Alamogordo, New Mexico.

In September 2005, the New Mexico Parole Board issued a parole certificate authorizing Mr. Simpson's parole. Due to various alleged difficulties in securing access to a dialysis chair in Alamogordo, Mr. Simpson never left CNMCF's custody, although he was placed on in-house parole.[1] Plaintiff alleges that as of September 2005 at least one of Mr. Simpson's toes was infected with gangrene. She claims that for approximately five months, thereafter, Mr. Simpson received inadequate medical treatment from Wexford, causing his condition to significantly worsen. The infection in Mr. Simpson's foot spread to his leg and hip. One of Mr. Simpson's legs was eventually amputated. The Complaint states he died on January 22, 2006.

Upon careful consideration of the parties' pleadings, the record, and governing law, the Court concludes that Plaintiff's constitutional claims against Defendant Biddle, unrelated

---

[1] Mr. Simpson's certificate of parole reads as follows:

> The Parole Board of the State of New Mexico, by virtue of the Authority conferred upon it by law, has approved your parole effective _____, 20____, or as soon thereafter as possible.
> Your parole will expire on _____, 20____, unless extended by an act of delinquency or revocation. This parole was authorized and special conditions mandated by the New Mexico parole Board at its meeting May 26, 2005.

to Mr. Simpson's medical care, are foreclosed by Supreme Court precedent. See Wilkinson v. Dotson, 544 U.S. 74, 78-84 (2005). The Court also determines that Defendant Biddle is entitled to "judgment as a matter of law" on Plaintiff's constitutional claims related to the medical care Mr. Simpson received while in CNMCF custody. Fed. R. Civ. P. 56(c). Left with no remaining federal causes of action, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. As explained herein, Defendant Biddle's motion for summary judgment is, therefore, GRANTED IN PART.

I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court, in applying this standard, is required to "view the evidence and draw all reasonable inferences therefrom in the light most favorable" to the nonmoving party — in this case Plaintiff. Reinhart v. Lincoln County, 482 F.3d 1225, 1229 (10th Cir. 2007). To withstand a motion for summary judgment, a plaintiff must do more than simply rest on the allegations of her pleadings. See Behrens v. Pelletier, 516 U.S. 299, 309 (1996). She must set forth "specific facts showing" that "a genuine issue for trial" exists. Trevizo v. Adams, 455 F.3d 1155, 1159 (10th Cir. 2006).

A.

Defendant Biddle is entitled to summary judgment on Plaintiff's claims for false imprisonment, unreasonable seizure, and deprivation of liberty without due process because

4

such claims are not cognizable under 42 U.S.C. § 1983. "[A] prisoner in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement." Wilkinson, 544 U.S. at 78. The only remedy available in these circumstances is "federal habeas corpus" or other "appropriate state relief." Id. This limitation is based on an "implicit exception from § 1983's otherwise broad scope," which the Supreme Court has carved out "for actions that lie within the core of habeas corpus." Id. at 79.

This § 1983 exception covers any claim by which a state prisoner seeks "to invalidate the duration of [his] confinement — either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81; see also Davis v. Kan. Dep't of Corr., 507 F.3d 1246, 1249 (10th Cir. 2007). Of course, this bar does not apply if success on a prisoner's claim would "not mean immediate release from confinement or a shorter stay in prison." Wilkinson, 544 U.S. at 82. But "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-82; Davis, 507 F.3d at 1249.

Even if the Court assumes that Plaintiff's claims of false imprisonment, unreasonable seizure, and deprivation of liberty without due process survived Mr. Simpson's death, any

§ 1983 suit on these grounds must fail.[2]  As personal representative, Plaintiff generally has the same right "to sue and be sued" as Mr. Simpson "had immediately prior to [his] death." N.M. Stat. § 45-3-703(E); see Robertson v. Wegmann, 436 U.S. 584, 589-90 (1978) (acknowledging that 42 U.S.C. § 1988(a) renders "state statutory law . . . the principal reference point in determining survival of civil rights actions" for purposes of § 1983).  But the only federal action Mr. Simpson could have taken to challenge his continued confinement, immediately prior to his death, was to petition this Court for a writ of habeas corpus.  See Wilkinson, 544 U.S. at 81-82.

To be clear, actions that necessarily imply the unlawfulness of an inmate's imprisonment — those that involve a right to immediate release from prison or a shortened period of confinement — are exempted from the scope of § 1983, even when such a suit merely challenges internal prison proceedings.  See id. at 80-82.  Plaintiff's claims for false imprisonment, unreasonable seizure, and deprivation of liberty without due process all rest

---

[2] Under New Mexico law, a personal representative does not have standing to bring claims that do not survive the death of the decedent.  See N.M. Stat. § 45-3-703(E).  Defendant Biddle notes that intentional torts, under New Mexico law, are claims that do not survive the victim's death.  See Oliveros v. Mitchell, 449 F.3d 1091, 1094 (10th Cir. 2006).  In this case, that point is immaterial.  Even if the Court assumes that (1) Plaintiff's allegations against Defendant Biddle involved intentional conduct, and (2) the constitutional claims predicated on that conduct survived Mr. Simpson's death, Supreme Court precedent bars any § 1983 claim that directly puts into question the validity of an inmate's "confinement or its duration." Wilkinson, 544 U.S. at 74-75.  For the same reason, Plaintiff's argument that the Court should not rely on New Mexico law to determine the survivability of intentional tort claims under § 1983 is equally beside the point.  See Pietrowski v. Town of Dibble, 134 F.3d 1006, 1008 (10th Cir. 1998) (explaining that "the survival of a § 1983 action is determined by looking to state law, so long as it is not inconsistent with federal law or the Constitution").

on the assumption that Mr. Simpson should have been paroled, i.e., he was entitled to a shortened period of confinement. Because success on these claims "would necessarily demonstrate the invalidity of [Mr. Simpson's] confinement or its duration," Plaintiff is barred from litigating them under § 1983.[3] Id. at 82; see also id. at 79 (stating that "a § 1983 action will not lie when a state prisoner challenges the fact or duration of his confinement"); Davis, 507 F.3d at 1249 (recognizing that a § 1983 claim is barred when success "would necessarily imply the invalidity of" a prisoner's sentence "or spell speedier release on" that sentence).

B.

Defendant is also entitled to summary judgment on Plaintiff's Eighth and Fourteenth Amendment claims related to the inadequate medical care Mr. Simpson allegedly received while in CNMCF custody. The law is clear that state prison officials may not "knowingly and unreasonably" disregard an "objectively intolerable risk of harm to inmate health or safety." Vallario v. Vandehey, 554 F.3d 1259, 1260 (10th Cir. 2009) (citing Farmer v. Brennan, 511 U.S. 825, 846 (1994)). But to succeed on an Eighth or Fourteenth Amendment claim for insufficient medical care a plaintiff must establish two things. See Sawyer v. County of Creek, 908 F.2d 663, 666 (10th Cir. 1990) (recognizing that the same standard applies whether a plaintiff institutes an Eighth or Fourteenth Amendment claim for inadequate medical care). First, a plaintiff must show the deprivation perpetrated by a defendant was, "objectively, sufficiently serious." Farmer, 511 U.S. at 834; see also id.

---

[3] As Plaintiff is barred from litigating claims that necessarily imply the unlawfulness of Mr. Simpson's imprisonment under § 1983, the Court need not consider Defendant Biddle's claim to qualified immunity.

(recognizing that an inmate must demonstrate "conditions posing a substantial risk of serious harm"). Second, a plaintiff must prove a defendant acted with a "state of mind" that is deliberately indifferent "to inmate health or safety." Id.; see also id. at 837 (explaining that an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"). A demonstration of mere negligence, under this standard, is insufficient. See id. at 835.

Although one could certainly question whether any misstep by Defendant Biddle — as a classification officer — could have a serious enough effect on Mr. Simpson's healthcare to trigger a constitutional tort, the Court's analysis will focus on the second prong of the applicable test. A prison official cannot be deliberately indifferent to "a substantial risk of serious harm to an inmate," id. at 828, without some "consciousness of a risk." Id. at 840. While the Court acknowledges that Plaintiff "may establish [Defendant Biddle's] awareness by reliance on any relevant evidence," id. at 848, the record in this case reveals no genuine issue of material fact as to whether Defendant Biddle was aware of an objectively intolerable risk of harm to Mr. Simpson's health.

The only material evidence in the record relating to Defendant Biddle's awareness of Mr. Simpson's medical condition and course of treatment comes from Defendant Biddle himself. Although Defendant Biddle acknowledged that he was aware Mr. Simpson had medical needs; i.e., he was in extremely poor health, was insulin dependent, and required dialysis three times a week; nothing in the record suggests he had any awareness of the quality of treatment Mr. Simpson received from CNMCF's medical staff. See Exhibit B to

Plaintiff's Response in Opposition to Defendant Christopher Biddle's Motion for Summary Judgment, Doc. 105-3, at 7, 11; id., Doc. 105-4, at 7, 9.  The pleadings, affidavits, and other materials in the record do not suggest that this is a case in which Defendant Biddle "had been exposed to information concerning" the alleged "risk" of inadequate medical care "and thus must have known about it."  Farmer, 511 U.S. at 842.  Because no genuine issue of material fact exists as to whether Defendant Biddle was aware of a substantial risk of serious harm to Mr. Simpson's health, let alone that Defendant Biddle disregarded such a risk in a deliberately indifferent manner, Plaintiff's § 1983 claims for inadequate medical care must fail.[4]

The Court notes that Plaintiff's assertion that this Court must assume the allegations of her Complaint to be true, at the summary judgment stage, is demonstrably incorrect.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis added).  Indeed, the Tenth Circuit has explicitly acknowledged that taking a plaintiff's allegations at face value, in the summary judgment context, is "an overly generous assumption in conflict with the" framework established by Rule 56.  AG Servs. of Am., Inc. v. Nielsen, 231 F.3d 737, 740 (10th Cir. 2000); see also

---

[4] The above-stated logic applies equally to any constitutional claim Plaintiff intends to bring against Defendant Biddle for "failure to intervene."

Behrens, 516 U.S. at 309 (noting that, on summary judgment, "the plaintiff can no longer rest on the pleadings . . . and the court looks to the evidence before it"). Accordingly, Plaintiff's allegations cannot shield her from an adverse judgment entered as a matter of law. See Fed. R. Civ. P. 56(c).

II.

Having determined that Defendant Biddle is entitled to summary judgment on Plaintiff's § 1983 claims, the Court is left with the tort actions Plaintiff instituted under the state law of New Mexico. Whether or not to exercise supplemental jurisdiction over these claims is a matter entrusted solely to this Court's "discretion." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004). Under 28 U.S.C. § 1367(c)(3), district courts possess the authority to decline to exercise supplemental jurisdiction over state law claims once "all claims over which" they had "original jurisdiction" have been dismissed. See Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998) (recognizing that district courts may "decline to exercise continuing pendent or supplemental jurisdiction over plaintiff's state claims" when "the bases for federal subject matter jurisdiction have been extinguished").

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims here.[5] Accordingly, Plaintiff's state tort claims for false imprisonment,

---

[5] Even if the Court were to consider Plaintiff's state law claims, it would likely find them barred under the New Mexico Tort Claims Act (NMTCA). The NMTCA shields "public employees from tort liability unless immunity is specifically waived by the Act." Oliveros v. Mitchell, 449 F.3d 1091, 1096 (10th Cir. 2006). Plaintiff maintains that the "building waiver exception" to public employees'

emotional distress, and negligent and reckless operation of a medical facility will be dismissed without prejudice. See Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1138 (10th Cir. 2004) ("A district court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction.").

III.

For the above-stated reasons, the Court GRANTS Defendant Biddle's motion for summary judgment as to Plaintiff's federal claims. The Court, in the exercise of its discretion, DISMISSES WITHOUT PREJUDICE the tort claims Plaintiff has lodged against Defendant Biddle under New Mexico state law. All claims having been dismissed against him, Defendant Biddle is hereby TERMINATED from this action.

SO ORDERED.

> Entered for the Court
> this 15th day of June, 2009
>
> _____
> The Hon. Bobby R. Baldock
> United States Circuit Judge
> Sitting By Designation

---

immunity applies here. See N.M. Stat. § 41-4-6(A). But this exception "does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public." Upton v. Clovis Mun. Sch. Dist., 141 P.3d 1259, 1263 (N.M. 2006).